UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID GREEN,

                              Plaintiff,

               -against-

MOUNT SINAI HEALTH SYSTEM, INC.,
and JAIRO MCZENO,

                             Defendants.
------------------------------------------------------------------X

Case No. 1:17-cv-3999

**COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiff, David Green ("Plaintiff" or "Mr. Green"), by and through his attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of Defendants, Mount Sinai Health System ("Mount Sinai" or "the hospital") and Jairo McZeno ("Mr. McZeno") (collectively "Defendants"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

1. This action is brought to remedy the Defendants' intentional, unlawful harassment of and retaliation against Plaintiff in violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), Executive Law of the State of New York, New York State Human Rights Law § 296, et seq. ("Executive Law"), and the Administrative Code of the City of New York, New York City Human Rights Law, § 8-101, et seq. ("Administrative Code").

## THE PARTIES

1. Plaintiff is an African-American, fifty-one (51) year old male.

2. Plaintiff is a resident of the State of New Jersey.

3. At all relevant times, Plaintiff was an employee of Defendant Mount Sinai (formally St. Luke's Hospital).

4. Defendant Mount Sinai Health System, Inc. is a domestic not-for-profit corporation doing business at One Gustave L. Levy Place New York, New York, 10029.

1

5.  Defendant McZeno is the Operations Manager at Mount Sinai and is a resident of the State of New York.

## PROCEDURAL BACKGROUND

6.  On or about January 30, 2017, Plaintiff timely filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation.

   a.  Upon request from Plaintiff, the EEOC terminated its investigation, and on February 27, 2017 issued Plaintiff a Notice of Right to Sue (attached hereto as **Exhibit 1**);

   b.  The instant action is timely because it was initiated within ninety (90) days of Plaintiff's receipt of the aforementioned Notice of Right to Sue; and

   c.  Plaintiff has exhausted his federal administrative remedies as concern the allegations of this Complaint.

## JURISDICTION and VENUE

7.  This court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States.

8.  This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a). The New York State and New York City retaliation claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) as events occurred in the Southern District of New York.

10. The principal place of business of the Mount Sinai Health System, Inc. is One Gustave L. Levy Place New York, New York, 10029.

11. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII.

**FACTS**

12. Plaintiff commenced employment with Defendant hospital on April 1, 1992 as a Staffing Assistant at St. Luke's Hospital (St. Luke's has since merged with Mt. Sinai).

13. In 2008 Plaintiff filed a charge of discrimination based on sexual harassment, hostile work environment and reverse sexual discrimination against Defendant hospital.

14. In 2008 Plaintiff filed a lawsuit for sexual harassment and discrimination against Defendant hospital.

15. In or about 2011, while the lawsuit was still pending, Defendant hospital further discriminated and retaliated against Plaintiff.

16. Plaintiff has been watched and scrutinized by the management of Defendant hospital from in or about 2011 continuing through the present.

17. Upon information and belief, Plaintiff had many false and unsubstantiated accusations directed at him.

18. Upon information and belief, other similarly situated employees, who did not complain about discrimination, were not subjected to such discriminatory treatment.

19. Upon information and belief, the discriminatory and disparate treatment Plaintiff received was retaliation for complaints of discrimination.

20. In 2014, Plaintiff lost many work benefits without any justification, including but not limited to overtime and benefit time.

21. Upon information and belief, this was another act of retaliation against Plaintiff for his complaints of discrimination against Defendant hospital.

22. Upon information and belief, other similarly situated employees who had not made complaints of discrimination were treated more favorably than Plaintiff and not subjected to this disparate treatment.

23. Plaintiff made many written complaints related to lost benefits and discrimination.

24. On or about October 1, 2014, Plaintiff had a meeting with the management of the hospital at which, immediately after he voiced his prior and then existing complaints, he was advised, that "Mount Sinai doesn't like this behavior."

25. On or about November 22, 2014, Plaintiff applied for an open position at a different hospital within Mount Sinai, but his application was denied.

26. Upon information and belief, Plaintiff's application was ignored and never taken under consideration.

27. Upon further information and belief, the Mount Sinai employees responsible for hiring applicants for the open position that Plaintiff applied for, were aware of Plaintiff's complaints of discrimination.

28. Upon information and belief, this was an act of retaliation for Plaintiff's complaints of discrimination, complaints of lost benefits and other adverse employment actions taken against him.

29. Upon information and belief, other similarly situated employees who had not complained of discrimination had their applications considered.

30. On or about January 26, 2015, Plaintiff sent a letter to Human Resources detailing all the retaliatory incidents that he experienced from his supervisors, per the instructions of his Union Representative Michael Leon.

31. In early February 2015, Defendant hospital reposted the new job opportunity and, upon information and belief, another candidate, who was non-union and less senior than Plaintiff, assumed that position, in direct violation of union rules.

32. Upon information and belief, Plaintiff was not considered for this job opportunity due to Defendants' retaliation against Plaintiff for complaints of discrimination and previous complaints of retaliation.

33. On or about February 26, 2015, Plaintiff had a meeting with the Director of Patient Care Services and Nursing Administration, Ms. Ceneas, SLR Labor Relations Ann McNicholas, about the discriminatory treatment he was experiencing from the management, including, but not limited to, the denial of a personal day request and the denial of transfer request.

34. Upon information and belief, the aforementioned denials were adverse actions taken against Plaintiff as retaliation for Plaintiff's complaints of discrimination and prior retaliation.

35. At the brief follow-up meeting on May 7, 2015, Plaintiff was told that his transfer application was not timely, even though Plaintiff had submitted it three days before the deadline.

36. On or about May 7, 2015, Plaintiff filed a grievance with the Union regarding his internal transfer request.

37. On or about July 2, 2015, at the Grievance hearing, it was discovered that Mount Sinai's Human Resources incorrectly stated that Plaintiff's application was not timely.

38. Upon information and belief, the false statement and denial of Plaintiff's transfer were retaliation against Plaintiff for his multiple complaints.

39. At that hearing, Plaintiff reached an agreement with Human Resources that he would be transferred to the same position he had previously applied for and that he would receive back pay for the amount that he would have made, had he been in that position since December 22, 2014.

40. On August 15, 2015, after Plaintiff's follow-up emails and calls, he was informed that management was still working on his position and "as soon as one become available it would be offered to the Plaintiff," even though this was not a part of the Grievance Decision.

41. Upon information and belief, Defendant hospital failed to adhere to the aforementioned agreement as an act of retaliation against Plaintiff for past complaints of discrimination and prior acts of retaliation.

42. After that, Plaintiff spoke to Mr. Brotherson over the phone and explained that the terms of the grievance were not met and that he was not transferred to the previously requested position. Mr. Brotherson replied "the Union would only go to arbitration if they felt that the agreements from the Grievance were not met."

43. On September 3, 2015, Plaintiff was told by Mr. Brotherson that Defendant Mount Sinai was planning to change his working hours into evening shifts instead of overnight shifts, which was not what Plaintiff previously agreed to.

44. Plaintiff sent several emails to Mr. Brotherson and Mrs. McNicholas regarding his transfer and arbitration, but never received any information as to why the transfer did not take place.

45. Upon information and belief, the Union was backing up the management in discriminating against Plaintiff and using Plaintiff's own words against him.

46. On October 22, 2015, Plaintiff filed unfair labor charge with the National Labor Relations Board (the "ULP Charge") for discrimination and refusing to transfer him out of the Department of Nursing and Administration at Mount Sinai.

47. On December 20, 2015, Plaintiff was placed into a part-time night Business Associate position at Mount Sinai West, after originally being denied an interview for the position.

48. Plaintiff was forced to take a pay-cut to escape the hostile work environment.

49. In January of 2016, Defendant hospital offered to settle all claims related to the Grievance, the UPL Charge, as well as all of Plaintiff's other claims against the hospital, and offered two thousand and five hundred dollars ($2,500.00) in exchange for Plaintiff's withdrawal, with prejudice, of the ULP Charge and dropping other charges, but Plaintiff did not sign that settlement. Again, Defendant was attempting to change to the terms of the original agreement, which did not include dropping the charges against any parties other than the Labor Board.

50. Upon information and belief, Defendant hospital wanted to prevent Plaintiff from pursuing his claims regarding all the retaliatory incidents committed against Plaintiff.

51. Upon information and belief, this was a further act of retaliation against Plaintiff for his prior complaints of discrimination and retaliation.

52. In April, 2016, Plaintiff re-filed all the charges with the National Labor Relations Board against Mount Sinai, which included, but was not limited to, the appropriate amount of back pay owed to Plaintiff.

53. Plaintiff's case was dismissed.

54. On June 23, 2016, Plaintiff had a meeting with Ms. Wilson from Human Resources regarding his back pay and multiple double-shifts ("mandations").

55. Upon information and belief, Plaintiff has been mandated every month, from the time he had assumed the Business Associate position, and on some occasions, even twice a month.

56. Upon information and belief, this was another act of retaliation against Plaintiff for his complaints of discrimination and retaliation against Defendant hospital.

57. Upon information and belief, other similarly situated employees who had not complained of discrimination or retaliation were not mandated excessively like Plaintiff.

58. On July 20, 2016 Plaintiff filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC").

59. After Plaintiff filed with the EEOC, Defendants further retaliated against him.

60. On September 3, 2016, Plaintiff appealed the decision of the Regional Director of National Labor Relations Board on refusing to issue a complaint on the charge.

61. On September 16, 2016, Plaintiff's supervisor, Defendant McZeno, retaliated against Plaintiff by falsely accusing him of not registering patients whenever he is Acute in the main Emergency Room, especially in the early morning between the hours of 7:35 am to 8:00 am.

62. Upon information and belief, Mr. McZeno was referring to one incident with a baby patient who was not ready for the full registration until Plaintiff finished his shift and was released from his duty.

63. Upon information and belief, Plaintiff diligently registers all of his patients and this accusation was a further act of retaliation against Plaintiff for prior complaints of discrimination and retaliation.

64. In September 2016, Defendants further retaliated against Plaintiff by failing to give him time off for surgery.

65. Defendant McZeno disregarded Plaintiff's illness and the doctor's note and put Plaintiff on the schedule to work on October 14, 2016, even though that was three days before the time Plaintiff was allowed to come back to work after his surgery.

66. Upon information and belief, Plaintiff was denied medical leave in yet another act of retaliation by Defendants.

67. On or about December 18, 2016, Plaintiff was mandated and forced to take an additional shift.

68. Upon information and belief, Plaintiff worked Thursday night, Friday night, and Saturday until 4 pm, and was scheduled to work Saturday night also, which he could not do because of the exhaustion.

69. Although Plaintiff called the Manager on call that Saturday evening and informed him he was not able to take the Saturday night shift, due to the fact that he was mandated in such a way that essentially was working twenty-four (24) hours straight and was exhausted, Plaintiff was marked absent, asked to bring a doctor's note, not paid and told that he would "have to make up that weekend."

70. Upon information and belief, Mount Sinai's policy states that only "employees who call out sick for two or more consecutive days will need to provide a doctor's note to validate their illness." Plaintiff called out for only one shift.

71. Upon information and belief, the aforementioned mandates were further acts of retaliation against Plaintiff for his complaints of discrimination and prior retaliation against Defendants.

72. On or about January 30, 2017, Plaintiff filed a second charge of discrimination, based on retaliation, with the Equal Employment Opportunity Commission ("EEOC").

73. After Plaintiff filed with the EEOC, Defendants further and retaliated against him.

74. On or about February 25, 2017, Plaintiff was mandated to work additional shift, which he was not able to do on that particular occasion. Plaintiff was expected to work twenty-four (24) hours without sleep.

75. Upon information and belief, this was an act of retaliation in response to Plaintiff's latest EEOC charge.

76. On March 3, 2017, although Plaintiff called the on-call Manager to report excess work hours pursuant to the hospital's policy, Plaintiff was called into a disciplinary meeting.

77. Upon information and belief, during the disciplinary meeting, Plaintiff was falsely accused of not coming to work when he was supposed to, not notifying on-call Manager, being unprofessional, being disruptive, having a bad attitude, and was given a warning of termination.

78. Upon information and belief, this warning was a further act of retaliation in response to Plaintiff's latest EEOC charge.

79. On March 3, 2017, Plaintiff was issued a letter of final warning, which stated that his behavior towards job, patients and management was unacceptable.

80. Upon information and belief, this was a further act of retaliation in response to Plaintiff's latest EEOC charge.

81. In late March, 2017, when Plaintiff scheduled to go on vacation, he found out that scheduled to work on those same days.

82. Despite calls to the on-call Manager to correct the mistake, upon information and belief, Plaintiff was purposely put on the schedule to work during his vacation time and marked absent when he did not come to work on the first day of his vacation.

83. Upon information and belief, the management of Mount Sinai was looking for an opportunity to terminate Plaintiff in retaliation for his complaints about discriminatory treatment.

84. Upon information and belief, this was a further act of retaliation against Plaintiff for his multiple complaints, both formal and informal, of discrimination and retaliation.

85. On May 10, 2017, Plaintiff was issued a yearly evaluation, which stated that his job performance meets all expectations, without any comment about, or reference to Plaintiff's "unprofessional behavior," since those accusations had all been retracted.

86. Upon information and belief, by issuing this wholly positive job performance evaluation (the "Positive Evaluation"), Mount Sinai's management was attempting to cover up all the retaliatory actions committed against Plaintiff; and, upon further information and belief, the Positive Evaluation reflects Defendants' admission of retaliatory actions against Plaintiff.

## FIRST CAUSE OF ACTION
**Retaliation in Violation of
Title VII, 42 U.S.C. 2000e et seq.
(As Against Defendant Mount Sinai)**

87. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

88. At all relevant times, Defendant was an "employer" within the meaning of Title VII for the Civil Rights of 1964, as amended ("Title VII"), because such entity had more than fifteen employees.

89. At all relevant times, Plaintiff was a "person" within the meaning of Title VII, 42 U.S.C. § 2000e.

90. In violation of Title VII, 42 U.S.C. 2000e et seq., Defendant retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination and retaliation, and for filing an EEOC Complaint for its unlawful retaliation, all of which were in violation of Federal, State, and City law.

91. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

92. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

93. Defendant is liable to Plaintiff for this unlawful retaliation.

94. By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

95.Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

96.In violation of New York State Executive Law § 296 et seq., Defendants retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination and retaliation, and for filing an EEOC Complaint for its unlawful retaliation, all of which were in violation of Federal, State, and City law.

97.As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

98.As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

99.Defendants are liable to Plaintiff for this unlawful retaliation.

100.By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of
### New York City Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

101. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

102. In violation of New York City Administrative Code § 8-107, et seq., Defendants retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination, and for filing an EEOC Complaint for its unlawful retaliation, all of which were in violation of Federal, State, and City law.

103. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

104. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

105. Defendants are liable to Plaintiff for this unlawful retaliation.

106. By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment
### (As Against All Defendants)

107. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

108. Defendants retaliated against Plaintiff for both formal and informal complaints of discrimination in violation of Federal, State, and City laws, by treating him differently from and less favorably than similarly situated employees and subjecting him to disparate working conditions and other disparate terms and conditions.

109. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

110. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

111. Defendants are liable to Plaintiff for creating and failing to remedy this hostile work environment.

112. By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment, awarding Plaintiff:

A. Monetary damages as against Defendant;

B. Costs;

C. Disbursements;

D. Expenses;

E. Attorney's fees;

F. Interest; and

G. Any other relief this Court deems just and proper.

Dated: New York, New York
May 26, 2017

BALLON STOLL BADER & NADLER, P.C.

By: s/Marshall B. Bellovin
MARSHALL B. BELLOVIN (MB5508)
*Attorneys for Plaintiff*
729 Seventh Avenue, 17th Floor
New York, N.Y. 10019
(212) 575-7900