UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/12/2019

------------------------------------------------------------ X
DAVID GREEN,

Plaintiff,

-against-

MOUNT SINAI HEALTH SYSTEM, INC. and JAIRO MCZENO,

Defendants.
------------------------------------------------------------ X

17-CV-3999 (VEC)

MEMORANDUM OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff David Green sued Defendants Mount Sinai Health System, Inc. ("Mount Sinai") and Jairo McZeno for retaliation and hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* *See* Compl., Dkt. 1. Defendants moved for summary judgment on all claims, pursuant to Federal Rule of Civil Procedure 56. *See* Notice of Mot., Dkt. 60. For the following reasons, Defendants' motion is GRANTED. This case is DISMISSED.

## BACKGROUND[1]

Plaintiff has worked for Mount Sinai, a system of hospitals in New York City, since 1992.[2] *See* Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1. In 2008, he filed a charge of discrimination against Mount Sinai with the U.S. Equal Employment Opportunity Commission ("EEOC") and sued the hospital in New York County Supreme Court for sexual harassment. *See* Defs.' 56.1 Stmt. ¶ 12; Pl.'s 56.1 Stmt. ¶ 12; McEvoy Decl. Ex. 8 ¶ 4. The state Supreme Court dismissed the case on summary judgment, and the Appellate Division affirmed. *See* Defs.' 56.1 Stmt. ¶¶ 13–14; Pl.'s 56.1 Stmt. ¶¶ 13–14.

For most of Plaintiff's career, he worked as a Staffing Assistant in Mount Sinai's Department of Nursing Administration. *See* Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1. In November 2014, he applied to transfer to the hospital's Emergency Department as a Business Associate. *See* Defs.' 56.1 Stmt. ¶ 26; Pl.'s 56.1 Stmt. ¶ 26. His application was denied because it was incorrectly marked as having been received after the application deadline had closed. *See* Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28.

Throughout 2015, Plaintiff submitted a number of complaints to his supervisors, to Mount Sinai's management, and to union officials about the denial of his application to transfer and, more generally, about the "hostile" and "retaliatory" environment to which he believed he

---

[1] The Court will refer to the parties' filings with the following abbreviations: the Declaration of Rory J. McEvoy, Dkt. 61, submitted in support of Defendants' motion as "McEvoy Decl."; the Declaration of Ann McNicholas, Dkt. 62, submitted in support of Defendants' motion as "McNicholas Decl."; Defendants' Local Civil Rule 56.1 Statement, Dkt. 63, as "Defs.' 56.1 Stmt."; Defendants' Memorandum of Law, Dkt. 64, as "Defs.' Mem. of Law"; the Declaration of Danielle Conn Rosenberg, Dkt. 67, submitted in opposition to Defendants' motion, as "Rosenberg Decl."; Plaintiff's Response Memorandum of Law, Dkt. 68, as "Pl.'s Resp. Mem. of Law"; Plaintiff's Declaration, Dkt. 69, as "Pl. Decl."; Plaintiff's response to Defendants' Rule 56.1 Statement, Dkt. 70, as "Pl.'s 56.1 Stmt."; the Reply Declaration of Rory J. McEvoy, Dkt. 71, submitted in support of Defendants' motion as "McEvoy Reply Decl."; and Defendants' Reply Memorandum of Law, Dkt. 72, as "Defs.' Reply Mem. of Law."

[2] Plaintiff originally worked for Mount Sinai St. Luke's and Mount Sinai West, entities affiliated with Mount Sinai Health System, Inc. The Court will refer to these entities collectively as "Mount Sinai."

was being subjected. *See* Defs.' 56.1 Stmt. ¶¶ 31–32; Pl.'s 56.1 Stmt. ¶¶ 31–32; Defs.' Mem. of Law at 5–7. In October 2015, he filed a complaint regarding the application to transfer with the National Labor Relations Board ("NLRB"). *See* Defs.' 56.1 Stmt. ¶ 80; Pl.'s 56.1 Stmt. ¶ 80.

Mount Sinai investigated the denial of Plaintiff's application to transfer and, in November 2015, offered him a position as a Business Associate. *See* Defs.' 56.1 Stmt. ¶ 55; Pl.'s 56.1 Stmt. ¶ 55. The position had the same title, schedule, and salary as the position in the Emergency Department for which Plaintiff had applied. *See* Defs.' 56.1 Stmt. ¶ 55; Pl.'s 56.1 Stmt. ¶ 55.[3] Plaintiff accepted the offer and began working as a Business Associate in the Emergency Department in December 2015. *See* Defs.' 56.1 Stmt. ¶ 62; Pl.'s 56.1 Stmt. ¶ 62.

In his new position, Plaintiff was required to work "mandated" shifts, known informally as "mandations," which were overtime shifts that employees had to work when other employees were late or absent. *See* Defs.' 56.1 Stmt. ¶¶ 60–61; Pl.'s 56.1 Stmt. ¶¶ 60–61. Mandations were assigned to each Business Associate in the Emergency Department on a rotating basis. *See* Defs.' 56.1 Stmt. ¶ 61; Pl.'s 56.1 Stmt. ¶ 61.[4]

In early 2016, Mount Sinai offered to settle a number of complaints that Plaintiff had filed against the hospital in exchange for Plaintiff's withdrawing his NLRB charge. *See* Pl. Decl. ¶¶ 13–16. Plaintiff refused to sign a settlement agreement but nevertheless withdrew the NLRB charge. *See id.*; Pl. Dep. at 106. Later, in May 2016, Plaintiff filed a new charge against Mount

---

3 Plaintiff asserts that Mount Sinai's failure to place him in the Business Associate position earlier than November 2015 deprived him of the benefit time, seniority, and backpay that he would have otherwise earned. *See* Pl.'s 56.1 Stmt. ¶ 55. Plaintiff, however, offers no evidence that disputes that the position that he was offered had the same title, salary, and schedule as the one for which he previously applied. *See id.*

4 Plaintiff objects that Defendants' assertions about mandated shifts are based on inadmissible hearsay. *See* Pl.'s 56.1 Stmt. ¶¶ 60–61. The objection is overruled. Defendants' assertions are based on the testimony of Jairo McZeno, who was a supervisor in the hospital's Emergency Department and who, therefore, has personal knowledge of the Department's policy on mandations. *See* Defs.' 56.1 Stmt. ¶¶ 60–61 (citing McZeno Dep. at 31–33).

Sinai with the NLRB. *See* Defs.' 56.1 Stmt. ¶ 86; Pl.'s 56.1 Stmt. ¶ 86. The NLRB dismissed that charge in September 2016. *See* Defs.' 56.1 Stmt. ¶¶ 92–93; Pl.'s 56.1 Stmt. ¶¶ 92–93. Plaintiff appealed the dismissal within the NLRB, but the appeal was denied. *See* Defs.' 56.1 Stmt. ¶¶ 92–93; Pl.'s 56.1 Stmt. ¶¶ 92–93.

On January 30, 2017, Plaintiff filed a new charge of discrimination against Mount Sinai with the EEOC. *See* Defs.' 56.1 Stmt. ¶ 106 (citing Pl. Dep. Ex. 6); Pl.'s 56.1 Stmt. ¶ 106. He received a right-to-sue letter a month later. *See* Pl. Dep. Ex. 8. In March 2017, Plaintiff received a "final warning" from his supervisor for failing to work an assigned shift. *See* Defs.' 56.1 Stmt. ¶¶ 68–69, 71; Pl.'s 56.1 Stmt. ¶¶ 68–69, 71. Plaintiff filed the present lawsuit on May 26, 2017. *See* Compl.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Courts "construe the facts in the light most favorable to the non-moving party . . . and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank*

*of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009)).

A district court is "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A party opposing a motion for summary judgment must "specifically respond to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must] support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CIV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017) ("Plaintiff cannot expect the Court to comb the record to find evidence not highlighted in [Plaintiff's] motion papers—summary judgment is not a game of hide and seek."). Accordingly, to the extent that Plaintiff's motion papers assert arguments without citations to the record, the Court need not consider them.[5]

## II. Plaintiff Has Abandoned His Claims for Hostile Work Environment

Defendants moved for summary judgment on Plaintiff's claims of hostile work environment, *see* Defs.' Mem. of Law at 17–18, 21–25; Plaintiff's response entirely failed to respond to the argument (or even to mention the claims beyond a cursory reference). Accordingly, Plaintiff has abandoned those claims, and Defendants' motion for summary judgment is granted as to these claims. *See Jackson v. Federal Express*, 766 F.3d 189, 195 (2d

[5] Several assertions in Plaintiff's motion papers cite to exhibits and pages of deposition transcripts that were not included in the parties' submissions to this Court. Because Plaintiff did not provide the Court with those parts of the record, those assertions are unsupported.

Cir. 2014) (if a non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims"); *see also Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016).

## III. Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Retaliation Claims

### A. The Applicable Law

Retaliation claims brought pursuant to Title VII, the NYSHRL, and the NYCHRL are all evaluated under the familiar *McDonnell Douglas* three-step burden-shifting framework. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). A plaintiff establishes a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 164. To rebut the presumption created by the plaintiff's prima facie case, a defendant must proffer "a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant does so, the plaintiff must come forward with evidence to show pretext, that is, evidence that "retaliation was a substantial reason for the adverse employment action[s]" or that "a retaliatory motive played a part in the adverse employment actions even if it was not [their] sole cause." *Id.*

The elements of retaliation under Title VII, the NYSHRL, and the NYCHRL are "identical," except that the NYCHRL employs a broader standard of an "adverse employment action" than the federal and state statutes. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016); *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76

(2d Cir. 2015) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013)); *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009); *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).

**B. Protected Activity**

An employee engages in a "protected activity" when he complains of an employment practice that he "reasonably believes" violates the anti-discrimination laws. *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011); *see also Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). In order to constitute protected activity, the employee's complaint "must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by" the anti-discrimination laws, as opposed to complaining about unfair or unpleasant treatment generally. *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)). "Generalized complaints about a supervisor's treatment" are not protected activity. *Id.*; *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016). "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009).

Plaintiff's response papers include a litany of allegedly protected activities. *See* Pl.'s Resp. Mem. of Law at 4–9. Defendants do not dispute that two of these activities, Plaintiff's filing EEOC charges in 2008 and in January 2017, can support Plaintiff's prima facie case.

*See* Defs.' Mem. of Law at 3, 14–15. The balance of the allegedly protected activities fail as a matter of law.[6]

First, four of the categories of complaints discussed in Plaintiff's papers are not protected activity because they involve only generalized complaints about Plaintiff's workplace conditions:

- In September and October 2014, Plaintiff complained in writing to his supervisors, Mount Sinai management, and union officials, *see* Defs.' 56.1 Stmt. ¶¶ 21–24; Pl.'s 56.1 Stmt. ¶¶ 21–24; Pl. Dep. Exs. 7, 11;

- In November 2015, Plaintiff complained to Mount Sinai's corporate compliance officer about "unethical" and "abusive" conduct, *see* Pl. Decl. Ex. D (Pl. Dep. Ex. 56); McNicholas Dep. at 81–82;

- In August 2015, Plaintiff complained to hospital management about the denial of his application for the Business Associate position, *see* Pl. Decl. Ex. E (Pl. Dep. Ex. 18); and

- In October 2016, Plaintiff complained in writing to hospital management and union representatives about his treatment by his supervisor, *see* Pl. Decl. Ex. F (Pl. Dep. Ex. 85).

None of these communications contains any indication that Plaintiff intended to complain about unlawful discrimination, rather than poor treatment generally. In these complaints, for example, Plaintiff alleged that his supervisors had violated his "personal right to privacy," Pl. Dep. Ex. 11; had made "false accusations" against him in order to "destroy [his] name and reputation," Pl. Decl. Ex. F (Pl. Dep. Ex. 85); and were generally "unscrupulous, underhanded, [and] sneaky," Pl. Dep. Ex. 7. Plaintiff also complained that he been the "victim of abusive behavior" by the hospital's "managerial staff," Pl. Decl. Ex. D (Pl. Dep. Ex. 56), and that his numerous complaints had been "ignored" by management, *id.* Ex. E (Pl. Dep. Ex. 18).

Scattered throughout these complaints are oblique references to "discrimination," "retaliation," and a "hostile environment." Pl. Dep. Exs. 7, 11; Pl. Decl. Ex. D (Pl. Dep. Ex. 56);

[6] Any allegedly protected activity that is not discussed in this opinion was not addressed in Plaintiff's response memorandum of law and, thus, was abandoned. *See Jackson*, 766 F.3d at 195.

*id.* Ex. E (Pl. Dep. Ex. 18). None of these communications, however, can reasonably be read as alleging an unlawful employment practice under the anti-discrimination laws. None contains any reference to a protected characteristic, such as race or gender, nor does any allege any circumstantial evidence of race- or gender-based animus.[7] For the most part, the communications also allege only petty slights and trivial inconveniences, which are not actionable under the anti-discrimination laws. Sprinkling a run-of-the-mill employment gripe with words like "discrimination" does not transform it into protected activity "if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly*, 716 F.3d at 17. Because no reasonable juror could find that any of these complaints was protected activity, they do not support Plaintiff's prima facie case.

Plaintiff also argues that he engaged in protected activity in February 2015 when he attended a meeting with Mount Sinai's labor relations department and stated that the hospital's chief nursing officer had called him a "criminal," a term that Plaintiff believed was "racially charged." Pl.'s Resp. Mem. of Law at 6–7 (citing Pl. Dep. at 69, 83–84, 158; *id.* Ex. 13). This argument lacks merit. The term "criminal" is facially race-neutral, and Plaintiff offers no other evidence that the remark was motivated by racial animus; accordingly, no reasonable juror could interpret this remark as evincing a hostile work environment, an intent to discriminate, or any other unlawful employment practice. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010); *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007).[8]

---

7 Plaintiff admits in his response to Defendants' Rule 56.1 statement that the references to retaliation and a hostile environment in one of these complaints, dated October 2014, did not relate to "membership in any protected class." Defs.' 56.1 Stmt. ¶ 32 (citing Pl. Dep. Ex. 11); Pl.'s 56.1 Stmt. ¶ 32.

8 Even if this remark were actually racially charged, a stray racist remark is not, standing alone, an unlawful employment practice under Title VII, the NYSHRL, or the NYCHRL; accordingly, a complaint about such a remark does not, without more, constitute a protected activity. *See Kelly*, 716 F.3d at 15 (noting that in a prior Title VII case, an employee who "'reported overhearing racial slurs' . . . had not engaged in protected activity" (quoting *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134–35 (2d Cir. 1999))); *see also Camarda*, 673 F. App'x at

Plaintiff also argues that he engaged in protected activity in February and April 2016, when he refused to execute a settlement agreement that Mount Sinai had proposed. *See* Pl.'s Resp. Mem. of Law at 7 (citing Pl. Dep. at 118–21; *id.* Ex. 29); *see also* Pl. Dep. Ex. 27. A plaintiff's refusal to sign a settlement agreement, however, is a protected activity "only if that refusal communicates an intent to complain about discriminatory employment practices." *Pleener v. New York City Bd. of Educ.*, No. 05-CV-973, 2007 WL 2907343, at *16 (E.D.N.Y. Oct. 4, 2007), *aff'd*, 311 F. App'x 479 (2d Cir. 2009). Plaintiff offers no evidence that he intended his refusal to communicate a complaint about violations of the anti-discrimination laws. On the contrary, Plaintiff testified during his deposition that he refused to sign the settlement agreement because he did not want to waive his right to pursue an "obstruction-of-justice" action against Mount Sinai for its having "lied to the courts" during his 2008 lawsuit. Pl. Dep. at 121–22.[9]

Plaintiff also argues that he engaged in protected activity when he filed complaints against Mount Sinai with the NLRB in October 2015 and May 2016. *See* Pl.'s Resp. Mem. of Law at 5, 7 (citing Pl. Dep. Exs. 19, 28). This argument lacks merit. Plaintiff's NLRB complaints alleged that Mount Sinai had retaliated against him "in order to discourage his union activities and other protected concerted activities" under the National Labor Relations Act ("NLRA"). Pl. Dep. Exs. 19, 28. Nothing in the complaint could reasonably have put Mount Sinai on notice that Plaintiff was complaining about violations of the anti-discrimination laws, as

29 (stray remark did not "give rise to the inference of discriminatory motivation necessary to make out a prima facie case under . . . the more liberal standard governing the NYCHRL"); *Simon v. City of New York*, No. 17-CV-9575, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (same); *Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.*, No. 11-CV-8934, 2014 WL 896744, at *10 (S.D.N.Y. Mar. 3, 2014) (same).

[9] Underscoring this point, Plaintiff spent months during this time writing letters to the U.S. Attorney for the Southern District of New York, a U.S. Senator, and the New York Attorney General asking them to investigate Mount Sinai for "obstruct[ing] . . . justice" during the 2008 lawsuit. *See* Defs.' Mem. of Law at 11.

opposed to violations of the NLRA. *See Kwaning v. Cmty. Educ. Centers, Inc.*, No. 15-CV-928, 2015 WL 1600068, at *4 (E.D. Pa. Apr. 8, 2015) ("participation in an NLRB investigation" was not a protected activity because the investigation "dealt with unfair labor practices, rather than conduct made unlawful under Title VII"); *Delaney v. LaHood*, No. 07-CV-471, 2009 WL 3199687, at *22 (E.D.N.Y. Sept. 30, 2009) ("It is well settled that union grievances that do not allege discrimination do not constitute protected activity within the meaning of Title VII."); *Johnson v. Holway*, 439 F. Supp. 2d 180, 225 (D.D.C. 2006) (filing of an unfair labor practice charge was not a protected activity under Title VII).[10] Accordingly, the NLRB complaints cannot support Plaintiff's prima facie case.

Plaintiff also argues that he engaged in protected activity in September 2016, when he appealed the NLRB's dismissal of his complaints. *See* Pl.'s Resp. Mem. of Law at 8 (citing Pl. Dep. at 136–40; Pl. Dep. Ex. 35). Because the underlying NLRB complaints were not protected activity, the Court is hard-pressed to see how an appeal of the dismissal of those complaints could be protected activity. Further, the appeal contains absolutely nothing to suggest that it relates to a complaint about unlawful discrimination; the appeal is a one-sentence document that states simply, "Please be advised that an appeal is hereby taken to the General Counsel of the National Labor Relations Board from the action of the Regional Director in refusing to issue a complaint on the charge in Mount Sinai Health Systems / Union 1199 SEIU." Pl. Dep. Ex. 35. Accordingly, the appeal cannot support Plaintiff's prima facie case.

Plaintiff asserts that he engaged in protected activity in June 2016 when he and his supervisor discussed shift mandations. *See* Pl.'s Mem. of Law at 8 (citing Pl. Dep. at 309–310;

---

10 *See also Rector v. United States Dep't of Justice*, No. 14-CV-1883, 2016 WL 7188135, at *9 (S.D.N.Y. Nov. 22, 2016); *Turner v. Davidson/Gilmour Pipe Supply*, No. 04-CV-3278, 2006 WL 1652613, at *9 (E.D.N.Y. June 14, 2006); *Marshall v. Nat'l Assoc. of Letter Carriers Br. 36*, No. 00-CV-3167, 2003 WL 223563, at *9 (S.D.N.Y. Feb. 3, 2003).

Pl. Dep. Ex. 84). None of the materials that Plaintiff cites for this assertion, however, was included in the parties' submissions to this Court, and Plaintiff's description of the documents in his response brief indicates that the conversation pertained to "when he would be paid" for working overtime, not discrimination. *Id.*

Plaintiff also argues that he engaged in a protected activity when the EEOC issued him a right-to-sue letter following his 2017 charge of discrimination. *See* Pl.'s Mem. of Law at 8 (citing Pl. Dep. at 42; *id.* Ex. 8). It is well-established, however, that the receipt of a right-to-sue letter, as distinguished from the filing of the EEOC charge to which the letter relates, is not protected activity. *See Hassan v. City of Ithaca*, No. 6:11-CV-06535, 2015 WL 5943492, at *14 (W.D.N.Y. Oct. 13, 2015); *Chukwuka v. City of New York*, No. 08-CV-2095, 2010 WL 3780214, at *7 (E.D.N.Y. Sept. 21, 2010).[11]

Finally, Plaintiff argues that he engaged in a protected activity when he filed this lawsuit in May 2017. *See* Pl.'s Mem. of Law at 9. Plaintiff, however, has raised this argument for the first time in his response brief; he did not amend his pleading to assert this as a basis for his retaliation claim. Accordingly, the Court will not consider it. *See Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in [the plaintiff's] opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."); *see also Penney v. AIG Domestic Claims, Inc.*, No. 04-CV-9071, 2007 WL 541711, at *9 (S.D.N.Y. Feb. 20, 2007) (collecting cases).[12]

---

11 Plaintiff also asserts that he engaged in protected activity when, in March 2017, he sent an "email to management referencing the EEOC right to sue letter," but Plaintiff provides no citations to the record to support the assertion that he sent any such email. Pl.'s Mem. of Law at 5.

12 In any event, as the Court will explain, Plaintiff does not allege any cognizable adverse action that occurred after the this lawsuit was filed. Thus, even if this argument had been properly raised, it would not support Plaintiff's prima facie case.

In sum, Plaintiff engaged in no protected activity other than filing EEOC charges in 2008 and January 2017. In reaching this conclusion, the Court is mindful that Plaintiff's complaints need not actually establish "that the conduct [he] opposed was in fact a violation" of the anti-discrimination laws; rather, the complaints need only establish a "good faith, reasonable belief that the underlying challenged actions" violated these laws. *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 416 (S.D.N.Y. 2006). Here, however, Plaintiff's complaints are utterly devoid of any reference to race, gender, or any other protected characteristic. The complaints, therefore, do not reflect a reasonable belief that the challenged actions violated the discrimination laws. Because Mount Sinai could not possibly have been on notice that Plaintiff was complaining about violations of the anti-discrimination laws, as opposed to unfair treatment generally, as a matter of law, none of these complaints is protected activity.

The Court is also aware that it must analyze Plaintiff's claim under the NYCHRL separately from his claims under Title VII and the NYSHRL. Like the federal and state statutes, however, a complaint is protected activity under the NYCHRL only if it opposes a practice that the NYCHRL prohibits (*i.e.*, discrimination based on a protected characteristic). *See* N.Y.C. Admin. Code § 8–107(7) (prohibiting employers from retaliating against a person who has "opposed [a] practice forbidden *under this chapter*" (emphasis added)). And although the NYCHRL's prohibitions are broad, the statute still requires a plaintiff to show "that the conduct [complained of was] caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110; *see also Ya-Chen*, 805 F.3d at 76–77; *Philip v. Gtech Corp.*, No. 14-CV-9261, 2016 WL 3959729, at *12 (S.D.N.Y. July 20, 2016). Accordingly, courts have not hesitated to dismiss claims for retaliation under the NYCHRL when plaintiffs failed to show that their underlying complaints

related to unlawful discrimination. *See, e.g.*, *Fattoruso*, 525 F. App'x at 27–28; *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

**C. Adverse Actions and Causal Connection**

As to the third prong of Plaintiff's prima facie case, under Title VII and the NYSHRL, Plaintiff must show that he suffered a "materially adverse" employment action, that is, one that could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks*, 593 F.3d at 162, 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019). The NYCHRL contains a similar standard—Plaintiff must prove that Defendants did something "that would be reasonably likely to deter a person from engaging in protected activity," *Jimenez*, 605 F. Supp. 2d at 528; *see also Ya-Chen*, 805 F.3d at 76–77—but the standard under the NYCHRL is "construed more broadly" than its federal and state counterparts, *Goonewardena v. N.Y. State Workers' Comp. Bd.*, No. 09-CV-8244, 2016 WL 7439414, at *19 (S.D.N.Y. Feb. 9, 2016) (citing *Mihalik*, 715 F.3d at 112), *report and recommendation adopted*, 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016).

The fourth prong of Plaintiff's prima facie case, proof of a causal connection between a protected activity and an adverse employment action, "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Evidence of temporal proximity alone can establish a prima facie case of causation, *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) (per

curiam), but three to four months is, ordinarily, the outer limit of time that can give rise to an inference of a causal connection, *see Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018).

Plaintiff's response brief asserts more than a dozen adverse actions allegedly taken by Defendants. *See* Pl.'s Resp. Mem. of Law at 10–13. All of these alleged adverse actions took place in or after 2014, that is, at least six years after Plaintiff filed his 2008 EEOC charge. That amount of time is far too long to raise an inference that the adverse actions were motivated by an intent to retaliate for the 2008 charge, and Plaintiff offers no other evidence of a causal connection between these actions and the 2008 charge. Accordingly, the 2008 EEOC charge does not support Plaintiff's prima facie case.

As to the January 2017 EEOC charge, Plaintiff asserts only three adverse actions that were taken after the charge was filed: (1) a Mount Sinai employee told Plaintiff in March 2018 that he "didn't belong . . . in the department" to which he was assigned, *see* Pl. Decl. ¶ 31; (2) Plaintiff was subjected to mandated shifts while working as a Business Associate, *see id.* ¶ 12; and (3) Plaintiff received a "final warning" in March 2017 after he failed to work an assigned shift, *see* Defs.' 56.1 Stmt. ¶¶ 68–71; Pl.'s 56.1 Stmt. ¶¶ 68–71. These arguments each lack merit.

The March 2018 incident occurred more than a year after Plaintiff filed his 2017 EEOC charge, which is far too long to raise an inference of a causal connection, and Plaintiff offers no other evidence of causation. Additionally, this type of stray remark (for which Plaintiff offers no further context or explanation, *see* Pl. Decl. ¶ 31) is not, without more, something that could dissuade a reasonable employee from lodging a discrimination claim.

The assertion that Plaintiff was subjected to mandated shifts is not supported with any dates or details, making it impossible to tell whether the shifts occurred before or after Plaintiff filed his January 2017 EEOC charge. *See* Pl.'s Mem. of Law at 12; Pl. Decl. ¶ 12. Assuming that the shifts took place after the charge was filed, Defendants have offered undisputed evidence that mandated shifts are assigned to all Business Associates "on an equal basis." Defs.' 56.1 Stmt. ¶ 61. Plaintiff offers no evidence that he was singled out for mandated shifts, that they increased after he engaged in protected activity, or any other circumstantial evidence that might support a reasonable inference that the shifts were motivated by an intent to retaliate. Thus, assuming that these shifts could support a prima facie case, Defendants would have unrebutted evidence of a legitimate, non-retaliatory reason for them.

As to the final warning, Defendants correctly concede that it is an adverse employment action under federal, state, and city law. *See* Defs.' Mem. of Law at 21, 24–25. The warning, dated March 2017, is also (barely) sufficiently close in time to the January 2017 EEOC charge to raise an inference of causation. But Plaintiff received the warning only after he "blatantly refused to come to work for [his] regularly scheduled assigned shift," despite not being ill and despite knowing he was required to work the shift. Pl. Dep. Ex. 46; *see also id.* at 203; Defs.' 56.1 Stmt. ¶¶ 69, 71; Pl.'s 56.1 Stmt. ¶¶ 69, 71. Plaintiff had previously received oral warnings about this sort of misconduct, *see* Pl. Dep. at 209, and, just a few months prior, Plaintiff had refused to work a shift due to illness but had refused to produce a doctor's note when ordered to do so, *see* Defs.' 56.1 Stmt. ¶¶ 73, 161; Pl. Dep. 193–203.[13] Given these circumstances, it was eminently reasonable for Mount Sinai to issue Plaintiff a final warning. Plaintiff offers no

13 While Plaintiff quibbles about whether he should have been required to provide a doctor's note at that time, Pl.'s 56.1 Stmt. ¶ 73, he does not dispute that he refused to comply with his supervisor's requests when they asked him for the doctor's note. *See also* Defs.' 56.1 Stmt. ¶ 161; Pl.'s 56.1 Stmt. ¶ 161.

evidence at all that this non-retaliatory explanation is pretextual. Accordingly, no reasonable juror could find that the final warning was an act of retaliation.

The balance of the alleged adverse actions that Plaintiff recites in his response brief occurred prior to the time that he filed the 2017 EEOC charge. *See* Pl.'s Mem. of Law at 10–14. By definition, an adverse action can be an act of retaliation only if the action follows the protected activity. *See St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 328 (E.D.N.Y. 2014); *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005). Accordingly, none of these actions can support Plaintiff's prima facie case.[14]

Finally, the Court is well-aware that it must analyze all adverse actions cumulatively when deciding a motion for summary judgment in an employment-discrimination case. *See Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016). But just as none of the alleged adverse actions gives rise to a reasonable inference of retaliation individually, nor do they do so when viewed collectively. Plaintiff offers absolutely no evidence of a retaliatory motive, other than temporal proximity, and most of the alleged adverse actions do not rise above petty slights, trivial inconveniences, or reasonable responses to Plaintiff's misconduct in the

[14] Any other alleged adverse actions were not argued in Plaintiff's response memorandum of law and, thus, were abandoned. *See Jackson*, 766 F.3d at 195. The Court notes, in particular, that Plaintiff's declaration asserts two adverse actions that took place after the 2017 EEOC charge was filed, but Plaintiff's memorandum of law does not support these assertions with legal argument or even mention them. *See* Pl. Decl. ¶¶ 27, 30. Absent some explanation or context for these actions, the Court is unable to determine whether these actions were sufficiently adverse to be "adverse actions" or whether they bear any causal connection to the 2017 EEOC charge; the assertions may therefore be deemed abandoned. *See Kovaco*, 834 F.3d at 143–44 (deeming claims abandoned because the plaintiff's memorandum of law was "bereft of any mention of the . . . claims, let alone argument why these claims should survive summary judgment" (emphasis omitted)); *Camarda*, 673 F. App'x at 30 (deeming claims abandoned when the plaintiff's memorandum of law failed to discuss those claims, even though the plaintiff's response to the defendants' Rule 56.1 statement properly "respond[ed] to each of defendants' proposed undisputed facts").

The Court also notes that several of the adverse actions asserted in Plaintiff's response brief are devoid of any details, dates, or citations to the record. *See, e.g.*, Pl.'s Mem. of Law at 10 (asserting, without further explanation, that Plaintiff was subject to an adverse employment action when he was "denied overtime pay"). As discussed, the Court need not—and indeed, cannot feasibly—consider these arguments.

Finally, because Plaintiff's claims fail on their merits, the Court need not address Defendants' argument that many of Plaintiff's claims are barred by the statute of limitations.

workplace. Accordingly, even when viewed as a whole, the record does not give rise to a reasonable inference of retaliation. Summary judgment must therefore be granted to Defendants on these claims.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is GRANTED. This case is DISMISSED. The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date: September 12, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**